IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **THIAGO CANNABRAVA DE SOUSA** | |
| Plaintiff, | |
| v. | |
| **CARRIE M. SELBY** Acting Associate Director, Service Center Operations; | Case No. |
| **JOSEPH B. EDLOW**, USCIS Director; and | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **KRISTI NOEM**, Secretary of Homeland Security | (Administrative Procedure Act, 5 U.S.C. §§ 701–706) |
| Defendants | |

Plaintiff Thiago Cannabrava de Sousa ("Plaintiff") alleges as follows:

## I. INTRODUCTION

1. This action seeks judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, of USCIS's final agency action denying Plaintiff's Form I-140 petition seeking classification as an immigrant of extraordinary ability (EB-1A) under INA § 203(b)(1)(A), 8 U.S.C. § 1153(b)(1)(A).

2. USCIS denied Plaintiff's I-140 petition on January 8, 2026 (Receipt No. IOE0933587604), after concluding Plaintiff satisfied only one regulatory criterion and refusing to credit multiple other criteria based on extra-regulatory requirements.

3. Under the APA, "the reviewing court shall decide all relevant questions of law" and must "hold unlawful and set aside" agency action found to be: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706.

4. Under *Loper Bright Enterprises v. Raimondo*, courts must exercise independent judgment in determining whether an agency has acted within its statutory authority and "may not defer" to an agency's interpretation of law simply because a statute is ambiguous.

5. USCIS's denial is unlawful because it: (a) imposed ultra vires, extra-textual evidentiary conditions not found in 8 C.F.R. § 204.5(h); (b) applied a burden more demanding than the preponderance standard; and (c) applied binding policy-made requirements without the procedures required by law.

6. Plaintiff seeks an order vacating USCIS's denial and remanding with instructions to approve the petition.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 and the APA, 5 U.S.C. §§ 702–706.

8. Venue is proper under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to these claims occurred in this District, including adjudication and issuance of the denial decision by the Nebraska Service Center in Lincoln, Nebraska.

## III. PARTIES

9. Plaintiff THIAGO CANNABRAVA DE SOUSA is the beneficiary and self-petitioner of the I-140 petition at issue (Case #: IOE0933587604 / A-Number A236-198-266).

10. Defendant JOSEPH B. EDLOW is sued in his official capacity as Director of U.S. Citizenship and Immigration Services ("USCIS").

11. Defendant CARRIE M. SELBY Acting Associate Director, Service Center Operations is sued in her official capacity as responsible for the Nebraska Service Center ("NSC"), the adjudicating office that denied Plaintiff's petition.

12. Defendant Kristi Noem is sued in her official capacity as Secretary of the Department of Homeland Security ("DHS"), the department overseeing USCIS.

## IV. STATUTORY / REGULATORY FRAMEWORK AND BURDEN OF PROOF

13. INA § 203(b)(1)(A) provides EB-1A classification to an alien of extraordinary ability who has sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,

who seeks to continue work in the area, and whose entry will substantially benefit the United States.

14. The implementing regulation defines "extraordinary ability" as "[a] level of expertise indicating that the individual is one of that small percentage who has risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2).

15. Absent a one-time major internationally recognized award, a petitioner may establish eligibility by meeting at least three of ten enumerated criteria at 8 C.F.R. § 204.5(h)(3).

16. The applicable standard of proof in most administrative immigration proceedings is "preponderance of the evidence": if the petitioner submits relevant, probative, and credible evidence leading the decisionmaker to believe the claim is "more likely than not" or "probably" true, the petitioner has satisfied the burden.

17. Under 5 U.S.C. § 706, this Court must decide relevant questions of law and set aside agency action that exceeds authority, is contrary to law, is arbitrary/capricious, or is taken without required procedures.

18. Under *Loper Bright*, the Court may not defer to USCIS's legal interpretations of the statute or regulations merely because the text is ambiguous; the Court must exercise independent judgment.

## V. FACTUAL BACKGROUND AND AGENCY ACTION

### A. Petition and denial

19. Plaintiff filed Form I-140 seeking EB-1A classification on August 26, 2025.

20. USCIS issued a Request for Evidence ("RFE") on September 15, 2025. Plaintiff responded on December 10, 2025, with extensive evidence.

21. On January 8, 2026, USCIS denied the petition.

22. USCIS found Plaintiff satisfied only criterion (iv) (judging the work of others) and concluded Plaintiff failed criteria (i), (iii), (v), (vi), and (viii).

23. USCIS then refused to conduct any further evaluation, stating:

"Since you have not established by a preponderance of the evidence that you meet at least three of the antecedent evidentiary prongs, USCIS will not conduct a final merits determination…"

## B. Adjudication relied on standardized "Policy Manual" structures

24. USCIS's denial reflects reliance on standardized, prewritten adjudication structures tied to internal guidance and the USCIS Policy Manual, rather than a case-specific application of 8 C.F.R. § 204.5(h) under the preponderance standard.

25. Throughout the denial, USCIS introduces each disputed EB-1A criterion with boilerplate phrasing ("The RFE stated: The criterion is not met. The plain language of this criterion requires…") and then invokes "USCIS Policy Manual: Volume 6, Part F, Chapter 2" in a standardized format.

26. USCIS repeatedly applies a pre-set "First… Second…" framework from the Policy Manual to decide whether evidence can be credited and to impose uniform prerequisites (e.g., media coverage, circulation/readership, citations, "recognized conferences," and employment-formality gates) as mandatory thresholds.

## C. Facts—USCIS template phrases as binding, generally applicable rules

27. USCIS did not adjudicate Plaintiff's petition by applying the text of 8 C.F.R. § 204.5(h) in a case-specific manner under the preponderance standard. Instead, USCIS applied pre-formulated "template" adjudicatory rules of general applicability—derived from internal guidance and the USCIS Policy Manual—as binding conditions of eligibility, thereby narrowing the regulatory criteria beyond their text.

28. The denial decision repeatedly uses standardized, template-driven structures that track USCIS Policy Manual language rather than independently analyzing the record. For each disputed criterion, USCIS begins with a boilerplate formulation—"The RFE stated: The criterion is not met. The plain language of this criterion requires…"—followed by a standardized recitation of the USCIS Policy Manual's "First… Second…" steps.

29. USCIS explicitly bases its adjudication on the USCIS Policy Manual's standardized "two-step" criterion templates. For example, under criterion (i) (awards), USCIS states: "USCIS Policy Manual: Volume 6, Part F, Chapter 2 states:" and then applies a pre-set two-part test ("First… Second…") to the evidence.

30. Likewise, under criterion (iii) (published material), USCIS again invokes the Policy Manual and applies its standardized template framing, stating: "USCIS Policy Manual: Volume 6, Part F, Chapter 2 states:" followed by bullet points

directing how officers "determine" whether material is "about the person" and whether a publication qualifies, including "circulation, readership, or viewership."

31. Under criterion (v) (original contributions), USCIS again relies on the same Policy Manual template—"First… Second…"—and then applies uniform, outcome-determinative prerequisites (e.g., citation levels and "widely utilized" proof) as mandatory gates.

32. Under criterion (viii) (leading/critical role), USCIS again applies standardized definitions and Policy Manual phrasing, including importing a dictionary definition of "distinguished" and repeating a uniform "key question" framing ("whether your role was leading or critical to the entire organization, establishment, division, or department"). These are presented as controlling rules, not case-specific considerations.

33. The template-based, generally applicable nature of USCIS's approach is confirmed by Plaintiff's RFE response letter, which expressly identifies that USCIS's adjudication utilizes "RFE/NOID template letters" and refers to the "non-exhaustive, exemplificative list of factors used by this Service in the RFE/NOID template letters."

34. USCIS's denial further demonstrates reliance on standardized template objections to evidentiary presentation rather than record-based analysis. USCIS repeatedly asserts that Plaintiff submitted "digital, self-made copies… that were reduced or altered" and labels such documentation "inadmissible," using categorical language consistent with a prewritten template rather than a fact-specific finding tailored to any particular exhibit.

35. These standardized template phrases and Policy Manual-driven frameworks were not applied as non-binding "guidance," but as mandatory, dispositive eligibility conditions—i.e., binding norms of general applicability. In particular, USCIS treated as required: (a) "national or international media coverage" and "highest level of the field" for awards; (b) "circulation/readership/viewership" proof (while rejecting modern web metrics) for published material; (c) citation thresholds, "track-record," "influence over the field as a whole," and "widely utilized by scientists" for original contributions; (d) "nationally or internationally recognized conferences" for scholarly authorship; and (e) "actual employee" and employer-letter formalities for leading/critical role. USCIS applied these non-textual prerequisites to deny Plaintiff at Step One and foreclose further review.

36. Because these requirements operate as legislative rules—binding standards of general applicability that materially change the evidentiary threshold and determine outcomes—USCIS was required (to the extent applicable) to adopt them through notice-and-comment rulemaking procedures under 5 U.S.C. § 553(b)–(c), and failure to do so renders the denial "without observance of procedure required by law" under 5 U.S.C. § 706(2)(D).

## VI. EB-1A CRITERIA: USCIS QUOTES, ULTRA VIRES REQUIREMENTS, APA VIOLATIONS, AND *LOPER BRIGHT* EFFECT

### A. Criterion (i): Lesser nationally or internationally recognized prizes or awards

37. Criterion (i) requires "[d]ocumentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor." 8 C.F.R. § 204.5(h)(3)(i).

38. USCIS stated:

"The plain language of this criterion requires evidence (1) that you be the recipient of prizes or awards; (2) that your prizes or awards be nationally or internationally recognized for excellence in the field of endeavor."

39. USCIS denied the criterion by adding extra requirements not found in the regulation, stating: "However, you did not provide sufficient evidence to demonstrate that the prizes or awards you received were in your field of industrial automation, robotics engineering, and software development; that the prizes or awards were given at the highest level of the field, and the prizes or awards were nationally or internationally recognized for excellence in the field of endeavor."

40. USCIS further required "media coverage" and repeated the "highest level" prerequisite, stating: "However, you did not provide independent and objective evidence to demonstrate that the awards had garnered national or international media coverage that would verify the awards, that you received the awards, that the awards were given at the highest level of the field, and were nationally or internationally recognized for excellence in the field of endeavor."

41. USCIS also discounted recognition as merely "institutional," stating: "In addition, while the supporting evidence may reflect institutional recognition, it does not reflect national or international recognition for excellence in the field. The

evidence of record does not demonstrate that the awards were/are recognized beyond the institution on a national or international level."

42. APA substantive violation. By treating "media coverage" and "highest level of the field" as mandatory prerequisites to satisfying criterion (i), USCIS acted "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations," requiring vacatur under 5 U.S.C. § 706(2)(A), (C).

43. Preponderance error. USCIS's insistence on one particular type of corroboration ("national or international media coverage") elevates the evidentiary burden beyond "more likely than not," contrary to the preponderance standard.

44. *Loper Bright* effect. Whether criterion (i) requires "media coverage" or "highest level" proof is a question of law. Under *Loper Bright* and § 706, this Court must independently interpret criterion (i) and reject USCIS's extra-textual prerequisites.

45. Procedural APA violation (§ 706(2)(D); § 553(b)–(c)). USCIS's "media coverage" and "highest level of the field" prerequisites operate as binding, generally applicable adjudicatory rules that narrow 8 C.F.R. § 204.5(h)(3)(i) beyond its text. USCIS applied these prerequisites as mandatory gates through standardized guidance and template reasoning rather than through lawful rulemaking procedures. Because these requirements function as legislative rules that materially affect outcomes, they are unlawful "without observance of procedure required by law" under 5 U.S.C. § 706(2)(D), and—to the extent notice-and-comment procedures apply or

were required to amend the governing regulation—were adopted without the procedures described in 5 U.S.C. § 553(b)–(c).

### B. Criterion (iii): Published material about Plaintiff in professional/major trade publications or other major media

46. Criterion (iii) requires published material "about the alien" in professional/major trade publications or other major media, relating to the alien's work, and including title, date, and author. 8 C.F.R. § 204.5(h)(3)(iii).

47. USCIS stated: "The plain language of this criterion requires published material about you in professional or major trade publications or other major media, relating to your specific work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation."

48. USCIS denied the criterion, stating: "First, each article does not appear to be about you related to your work in the field of industrial automation, robotics engineering, and software development." This averment runs afoul of the evidence on the record. It is unclear how USCIS could assert that the articles 'do not appear to be about the petitioner or related to his work in the field,' when the titles, subject matter, publication types, and technical focus of each piece unmistakably place them within the domains of industrial automation, robotics engineering, and software development.

49. USCIS also stated: "Second, some of the articles do not identify the author of the material."

50. USCIS then imposed a categorical exclusion: "The material that fails to identify the title, date, and/or author, do not meet the regulation at 8 CFR 204.5(h)(3)(iii) and are given no probative value under this criterion." USCIS's claim that some articles 'do not identify the author is unfounded, as the RFE response letter (p. 14-27) expressly addressed each publication with the required title, date, and author information clearly visible.

51. USCIS demanded specific circulation/readership metrics and rejected Plaintiff's web-metric evidence, stating: "For example, you provided information/data from semrush.com which is a tool to broadly determine estimations of internet domain traffic or visits or rankings, and/or pageviews, not to determine a publication's circulation, readership and/or viewership."

52. USCIS further stated: "General web domain statistics offer inappropriate comparisons that are not useful to determine whether a source is major media commensurate with this criterion."

53. USCIS also stated: "USCIS notes, that circulation, readership and/or viewership of published material is not the same as visitation and/or pageview and rankings of published material."

54. USCIS excluded evidence as "inadmissible," stating: "Fourth, you provided digital, self-made copies of documentary evidence that were reduced or altered, but such documentation is inadmissible… [and] does not comply with the regulatory requirements at 8 C.F.R. § 103.2(b)(3)."

55.     APA     substantive     violation.     By     adding     mandatory "circulation/readership/viewership" metrics as prerequisites—especially for online professional/trade outlets—while rejecting practical modern evidence, USCIS applied a non-textual legal standard, acting "not in accordance with law" and "in excess of…authority" under 5 U.S.C. § 706(2)(A), (C).

56.   Arbitrary-and-capricious error.   USCIS imposed a moving target by requiring online readership proof yet rejecting the proffered web-metric evidence as categorically "not useful," without articulating a workable evidentiary standard for online publications, in violation of 5 U.S.C. § 706(2)(A).

57. Preponderance error. USCIS's "no probative value" and "inadmissible" exclusions elevated form over substance and improperly raised the burden above "more likely than not," contrary to the preponderance standard.

58. *Loper Bright* effect. USCIS's narrowing of what qualifies as "professional or major trade publications" for online outlets and its insistence on traditional circulation evidence are legal interpretations of criterion (iii). Under *Loper Bright* and § 706, the Court must interpret criterion (iii) independently and reject USCIS's extra-textual narrowing.

59. Procedural APA violation (§ 706(2)(D); § 553(b)–(c)). USCIS's insistence on "circulation/readership/viewership" metrics—paired with categorical rejection of web-metric evidence—functions as a binding evidentiary rule that materially changes the practical requirements of criterion (iii) for modern online publications. USCIS applied this generally applicable rule through standardized guidance and

templates rather than through lawful rulemaking procedures. Accordingly, the denial is "without observance of procedure required by law" under 5 U.S.C. § 706(2)(D), and—to the extent notice-and-comment procedures apply or were required to amend the governing regulation—was adopted without the procedures described in 5 U.S.C. § 553(b)–(c).

## C. Criterion (iv): Participation as a judge of the work of others (USCIS conceded)

60. USCIS conceded Plaintiff met criterion (iv), stating: "USCIS has determined that you have provided sufficient documentation to establish you have met the following regulatory criteria: · (iv) Evidence of your participation, either individually or on a panel, as a judge of the work of others…"

## D. Criterion (v): Original contributions of major significance

61. Criterion (v) requires evidence of "original…contributions of major significance in the field." 8 C.F.R. § 204.5(h)(3)(v).

62. USCIS articulated the standard: "The plain language of this criterion requires… (2) that your contributions are original, and (3) that your original contributions have been of major significance in the field."

63. USCIS discounted evidence as non-probative based on letter format, stating: " However, the evidence from Mayra Hileli Tavares Demian, and the letter signed by 29 other professionals did not contain contact information (physical address) in accordance with Title 8, C.F.R § 204.5(g)(l) and therefore cannot be

considered probative." The RFE response expressly cured this point by submitting updated affidavits from all experts—including Ms. Demian and the 29 professionals—with full addresses in strict compliance with 8 C.F.R. § 204.5(g)(1)."

64. USCIC imposed a new comparative and citation threshold: "you did not provide sufficient evidence to demonstrate that your research and publications have had a major impact on the field." Publications and presentations are not sufficient under 8 C.F.R. § 204.5(h)(3)(v) absent evidence that they were of major significance." *See Kazarian v. USCIS.* 580 F.3d 1 030, 1036 (9th Cir. 2009), *qfj'd in part,* 596 F.3d 1 1 15. For example, you did not provide evidence to demonstrate that your research and work had been cited at a level indicative of major significance in the field."

65. USCIS imposed *ultra vires* requirement: "You did not provide sufficient evidence to demonstrate that your work has attracted significant attention, has been widely implemented, has provoked widespread commentary, has been referenced as authoritative, or has received notice from others at a level indicative of "major significance" in the field, as required under the criterion. Furthermore, you did not provide documentary evidence of widespread commercial or industrial implementation of your work, that it has been seminal, or that it otherwise equates to an original contribution of major significance in the field. See USCIS Policy Manual: Volume 6, Part F, Chapter 2."

66. Yet more *ultra vires* requirements: a) "The evidence does not demonstrate that your work has attracted significant attention or commercialization as compared to others in the field;" b) "Furthermore, you did not provide evidence that

distinguishes you from other presenters or past speakers in the field;" c) You did not provide evidence that distinguishes your participation or presentation at conferences compared to others that may demonstrate major significance in the field."

67. USCIS discounted patents by adding employment-context assumptions and field-wide influence requirements, stating: "… certainly a researcher is expected to develop and design innovations for his employer, whose intellectual properly is protected by patents."

68. USCIS further stated: "Additionally, a patent is not necessarily evidence of a track-record of success with some degree of influence over the field as a whole."

69. USCIS imposed a "widely utilized by scientists" prerequisite, stating: "You did not submit sufficient preexisting, independent, and objective evidence that the innovations are being widely utilized by scientists in the field, reaching far beyond your employer, clients, or customers."

70. APA substantive violation. Criterion (v) does not mandate citation counts, "track-record," "influence over the field as a whole," or "widely utilized by scientists" as prerequisites. By converting such considerations into mandatory legal conditions, USCIS acted "not in accordance with law" and "in excess of…authority" under 5 U.S.C. § 706(2)(A), (C).

71. Preponderance error. By demanding field-wide adoption/citation as a threshold gate, USCIS effectively raised the standard above "more likely than not" and rejected probative evidence contrary to the preponderance rule.

72. *Loper Bright* effect. USCIS's interpretation that "major significance" requires "influence over the field as a whole" and "widely utilized by scientists" is a legal construction of criterion (v). Under *Loper Bright* and § 706, the Court must interpret the regulation independently and reject USCIS's extra-textual prerequisites.

73. Procedural APA violation (§ 706(2)(D); § 553(b)–(c)). USCIS's citation, "track-record," field-wide influence, and "widely utilized by scientists" prerequisites function as binding adjudicatory rules that rewrite criterion (v) beyond 8 C.F.R. § 204.5(h)(3)(v). USCIS applied these generally applicable requirements via standardized guidance and templates rather than through lawful rulemaking procedures. Therefore, the denial is "without observance of procedure required by law" under 5 U.S.C. § 706(2)(D), and—to the extent notice-and-comment procedures apply or were required to amend the governing regulation—was adopted without the procedures described in 5 U.S.C. § 553(b)–(c).

### E. Criterion (vi): Authorship of scholarly articles

74. Criterion (vi) requires evidence of "authorship of scholarly articles in the field, in professional or major trade publications or other major media." 8 C.F.R. § 204.5(h)(3)(vi).

75. USCIS stated: "The plain language of this criterion requires evidence (I) of your authorship… (2) that the material authored by you is scholarly, and (3) that the

published material qualifies as professional or major trade publications or other major media."

76. USCIS denied the criterion, stating: "Second, you did not provide sufficient evidence to demonstrate that the conference presentations were published at nationally or internationally recognized conferences."

77. APA substantive violation. Criterion (vi) does not require that conference publications be from "nationally or internationally recognized conferences." By adding that prerequisite as a legal condition, USCIS acted "not in accordance with law" and "in excess of…authority" under 5 U.S.C. § 706(2)(A), (C).

78. Preponderance error. Treating a venue-prestige showing as a mandatory gate elevates the burden above "more likely than not," contrary to the preponderance standard.

79. *Loper Bright* effect. Whether criterion (vi) includes a "nationally or internationally recognized conference" prerequisite is a legal question. Under *Loper Bright* and § 706, the Court must decide that question independently and reject USCIS's extra-textual requirement.

80. Procedural APA violation (§ 706(2)(D); § 553(b)–(c)). USCIS's "nationally or internationally recognized conferences" prerequisite operates as a binding adjudicatory rule that alters criterion (vi) beyond the regulatory text. USCIS applied this generally applicable requirement through standardized guidance and templates rather than through lawful rulemaking procedures. Accordingly, the denial is "without observance of procedure required by law" under 5 U.S.C. § 706(2)(D), and—

to the extent notice-and-comment procedures apply or were required to amend the governing regulation—was adopted without the procedures described in 5 U.S.C. § 553(b)–(c).

### F. Criterion (viii): Leading or critical role for distinguished organizations

81. Criterion (viii) requires evidence that the alien "has performed in a leading or critical role for organizations or establishments that have a distinguished reputation." 8 C.F.R. § 204.5(h)(3)(viii).

82. USCIS articulated: "The plain language requires that (1) you have performed in a leading or critical role… and (2) that the organizations… have a distinguished reputation."

83. USCIS denied the criterion based on "employee" status: "USCIS is unable to determine whether you were an actual employee of the University."

84. USCIS also stated: "The letter… indicates that you were a consultant… and not an actual employee of Mercedes-Benz."

85. USCIS imposed an employer-letter constraint: "USCIS Policy Manual… expresses: that evidence of experience must consist of letters from employers."

86. APA substantive violation. Criterion (viii) requires proof of a leading/critical role; it does not impose W-2 "employee" status or rigid employer-letter formats as eligibility prerequisites. USCIS's added requirements are "not in accordance with law" and "in excess of … authority" under 5 U.S.C. § 706(2)(A), (C).

87. Preponderance error. Treating payroll status and letter formalities as dispositive elevates the burden above "more likely than not," contrary to the preponderance standard.

88. *Loper Bright* effect. USCIS's employee-status prerequisite is a legal narrowing of "performed in a leading or critical role." Under *Loper Bright* and § 706, the Court must interpret criterion (viii) independently and reject USCIS's extra-regulatory narrowing.

89. Procedural APA violation (§ 706(2)(D); § 553(b)–(c)). USCIS's "actual employee" and employer-letter prerequisites function as binding, generally applicable adjudicatory rules that materially narrow criterion (viii) beyond the regulation's text. USCIS applied these requirements through standardized guidance and templates rather than through lawful rulemaking procedures. Therefore, the denial is "without observance of procedure required by law" under 5 U.S.C. § 706(2)(D), and—to the extent notice-and-comment procedures apply or were required to amend the governing regulation—was adopted without the procedures described in 5 U.S.C. § 553(b)–(c).

## G. USCIS's refusal to proceed beyond Step One

90. USCIS refused to proceed to any further assessment because it found fewer than three criteria met, stating:

"Since you have not established by a preponderance of the evidence that you meet at least three of the antecedent evidentiary prongs, USCIS will not conduct a final merits determination…"

91. Because USCIS's denials of criteria (i), (iii), (v), (vi), and (viii) were infected by ultra vires, burden-elevating requirements and policy-made rules applied without required procedures, USCIS's refusal to proceed is itself arbitrary and contrary to law, requiring vacatur under 5 U.S.C. § 706(2).

## VII. CAUSES OF ACTION

### COUNT I — Agency action not in accordance with law / in excess of authority
### (5 U.S.C. § 706(2)(A), (C))

92. Plaintiff incorporates paragraphs 1–89.

93. USCIS denied Plaintiff's petition by imposing extra-textual eligibility prerequisites not found in 8 C.F.R. § 204.5(h)(3), including "media coverage" and "highest level of the field" requirements for awards; mandatory circulation/readership metrics for online publications; mandatory citation/field-wide adoption prerequisites for original contributions; "nationally or internationally recognized conferences" for scholarly authorship; and "actual employee" and employer-letter prerequisites for leading/critical role.

94. USCIS's decision is "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations," and must be set aside under 5 U.S.C. § 706(2)(A), (C).

## COUNT II — Arbitrary and capricious agency action

### (5 U.S.C. § 706(2)(A))

95. Plaintiff incorporates paragraphs 1–92.

96. USCIS's adjudication in this case is arbitrary and capricious for the additional and independent reason that it mirrors the precise defects condemned in *Mukherji v. Miller*, No. 4:24-CV-3170 (D. Neb. Jan. 28, 2026). In *Mukherji*, the U.S. District Court for the District of Nebraska held that USCIS's EB-1A adjudications are unlawful where (a) the agency applies policy-created standards not found in the regulation, (b) relies on vague, conclusory final-stage reasoning, and (c) fails to articulate a clear, reviewable rationale linking the record to the denial. The court found that USCIS repeatedly relied on internally-created adjudicatory standards— including its "final merits determination"—that were adopted without notice-and-comment rulemaking and applied in a manner that "lacked clear standards," was "arbitrary and capricious," and created a "moving target" for applicants. USCIS's denial in *Mukherji* was vacated because the agency "did not articulate a clear or reviewable standard," denied the petition using "broad, conclusory statements," and failed to connect any asserted deficiency to an actual regulatory requirement. Just as in *Mukherji*, USCIS here (1) imposed extra-regulatory eligibility prerequisites (e.g., "media coverage," "highest level of the field," circulation metrics, citation/field-wide adoption requirements, "nationally recognized conferences," and employee-status/letter-format rules); (2) denied

multiple criteria using boilerplate, template phrasing devoid of individualized analysis; (3) applied internal Policy Manual constructs as binding conditions of eligibility; and (4) refused to articulate any intelligible, legally-anchored rationale connecting Plaintiff's extensive evidence to the denial. Under *Mukherji*, these defects render the agency's reasoning unlawful and arbitrary: "USCIS cannot restate the legal standard and announce a conclusion without explaining why the evidence falls short," and may not deny EB-1A petitions using "vague" or "conclusory" formulations that provide no meaningful standard of review. .

## COUNT III — Agency action "without observance of procedure required by law"

### (5 U.S.C. § 706(2)(D); 5 U.S.C. § 553)

97. Plaintiff incorporates paragraphs 1–94.

98. In denying Plaintiff's EB-1A petition, USCIS applied multiple extra-regulatory requirements as binding conditions of eligibility, including but not limited to: (a) a "media coverage" and "highest level of the field" prerequisite for awards under criterion (i); (b) mandatory "circulation/readership/viewership" showings and categorical rejection of modern web-metric evidence for criterion (iii); (c) mandatory citation counts, "track-record," "influence over the field as a whole," and "widely utilized by scientists" prerequisites for criterion (v); (d) a "nationally or internationally recognized conferences" prerequisite for criterion (vi); and (e) "actual employee" status and employer-letter formalities as dispositive prerequisites for criterion (viii).

99. These prerequisites are not found in the governing statute or regulation, 8 C.F.R. § 204.5(h), and instead reflect policy-made standards adopted and implemented through internal guidance, Policy Manual language, and standardized adjudication templates. In operation, they function as generally applicable legislative rules that alter the evidentiary threshold and materially affect outcomes.

100. To the extent USCIS promulgates substantive eligibility requirements with binding effect, the APA generally requires notice-and-comment rulemaking—i.e., publication of notice of proposed rulemaking and an opportunity for interested persons to participate through submission of written data, views, or arguments. 5 U.S.C. § 553(b)–(c).

101. USCIS did not adopt the above binding prerequisites through notice-and-comment rulemaking under 5 U.S.C. § 553(b)–(c), nor did it publish those requirements as amendments to 8 C.F.R. § 204.5(h).

102. Defendants may contend that 5 U.S.C. § 553(a)(2) provides an exception for "a matter relating to…benefits." 5 U.S.C. § 553(a)(2).

103. Nevertheless, even if § 553(a)(2) is invoked, USCIS cannot lawfully effectuate amendments to a duly promulgated legislative rule (8 C.F.R. § 204.5(h)) by applying policy-made prerequisites as binding eligibility conditions in adjudication. Doing so is "without observance of procedure required by law" within the meaning of 5 U.S.C. § 706(2)(D), because it circumvents the legally required process for altering binding standards governing benefit eligibility and imposes generally applicable, outcome-determinative norms without lawful procedural adoption.

104. Accordingly, USCIS's denial decision must be held unlawful and set aside under 5 U.S.C. § 706(2)(D).

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare that USCIS's January 8, 2026 denial is unlawful under the APA;

B. Vacate and set aside USCIS's denial decision;

C. Remand with instructions to approve Plaintiff's I-140 EB-1A petition;

D. Award Plaintiff costs and reasonable attorneys' fees under 28 U.S.C. § 2412 and other applicable authority; and

E. Grant such other relief as the Court deems just and proper.


DATED: February 18, 2026


Respectfully submitted,


    /s/ Marcelo Gondim    .
Marcelo Gondim (SBN 271302)
Gondim Law Corp.
1880 Century Park East, Suite 400
Los Angeles, CA 90067
Telephone: 323-282-777
Email: court@gondim-law.com
Attorney for Plaintiff